Filed 8/7/14  P. v. Prather CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER TRAMAIN PRATHER,<br><br>    Defendant and Appellant. | B248669<br><br>(Los Angeles County<br>Super. Ct. No. MA056374)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on August 1, 2014, be modified as follows:

On page 5, first full paragraph under heading C, "CACI No. 1191" is changed to "CALCRIM No. 1191" so the sentence reads:

With regard to defendant's prior offenses, the judge instructed the jury pursuant to CALCRIM No. 1191 as follows:

There is no change in the judgment.

_____

1

*WILLHITE, Acting P. J.   MANELLA, J.   EDMON, J.**

**Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B248669 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. MA056374) |
| CHRISTOPHER TRAMAIN PRATHER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Murphy, Judge. Affirmed as modified.

George W. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Christopher Tramain Prather appeals from a judgment of conviction entered on jury verdicts finding him guilty of first degree burglary and sexual battery. He claims: (1) his conviction of first degree burglary was not supported by substantial evidence; (2) the trial court erred by admitting evidence of prior juvenile sexual offenses; and (3) the trial court erred by imposing a concurrent sentence for sexual battery. We direct the trial court to correct the abstract of judgment by staying the sentence for sexual battery, and we otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2012, defendant was charged by information with first degree burglary with a person present in violation of Penal Code section 459 (count 1), and sexual battery in violation of Penal Code section 243.4, subdivision (e)(1) (count 2).[1] An amended information, filed September 11, 2012, alleged a third count, assault to commit a felony during the commission of a first degree burglary, in violation of Penal Code section 220, subdivision (b).[2]

The case was tried to a jury in January and February 2013. The evidence at trial was as follows.

---

[1]     Penal Code section 459 provides in relevant part: "Every person who enters any house, room, [or] apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."
        Penal Code section 243.4, subdivision (e)(1) provides in relevant part: "Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery, punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding six months, or by both that fine and imprisonment."

[2]     Penal Code section 220, subdivision (b) provides: "(b) Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole."

2

*A.      The Burglary and Sexual Battery*

Laura T. (Laura) testified that in 2012, she lived in a two-bedroom apartment on Kirkland Avenue in Lancaster, California, with her mother, Deborah T. (Deborah), and her two young children.  During the afternoon of February 10, 2012, she walked to a convenience store a few blocks from her apartment to get cigarettes for her mother.  Two men, one of whom was the defendant, followed her.  She did not know either man.  At some point, defendant's companion asked Laura whether she lived in the Sienna Heights apartments, and she said she did.  As she walked back to her apartment, Laura realized that defendant was a couple of feet behind her.  She arrived at her apartment and knocked on the door.  Defendant asked if he could have a cigarette.  Laura said, "They're not mine," and walked into her apartment.

At about 2:00 a.m. the morning of February 11, 2012, Laura was awakened by someone opening the door to the bedroom where she and her infant son were sleeping.  Laura was wearing a pajama shirt and shorts.  When she moved, the door shut and then opened again.  She saw defendant standing halfway in the bedroom door.  She was scared.  Something inside her—"a force of anger and scaredness"—told her to get defendant out of her house.  She screamed at defendant to get out and pushed him towards the front door.  Defendant asked her for a cigarette, and she said either that she did not have any or that they were not hers.  At the front door, Laura told defendant to get out and started to push him.  As she did so, he grabbed or cupped her left breast.  He touched her breast "maybe three" times before she finally was able to get him out of the apartment.

As defendant left the apartment, Deborah came out of her bedroom.  Laura called building security, which dispatched a security guard.  Laura told the security guard what had happened and he called 911.  Deputy sheriffs arrived and took Laura's and Deborah's statements.

Deborah testified that she was first aware of the incident when she heard a knock on her bedroom wall.  She walked out of her bedroom and saw Laura yelling at someone

3

to get out of the house.  Laura looked shocked and scared.  It took Laura several minutes to be able to tell Deborah what happened, but she finally was able to say that the man who had followed her home had been in the apartment.

Following the incident, Laura or Deborah noticed a pair of men's sandals on the patio outside the apartment.  Defendant's DNA was found on the sandals.

On May 29, 2012, a deputy sheriff showed Laura a six-pack photographic lineup. Laura identified defendant as the man who entered her apartment.  The deputy then arrested defendant, who was also a resident of the Sienna Heights Apartments.

Deputy sheriffs interviewed defendant on May 30, 2012.[3]  Defendant initially said he did not leave his shoes on Laura's patio or enter her apartment.  He then said he entered her apartment through her open front door to ask her for a cigarette.  When she said she did not have one, he left.  Later in the interview, he admitted entering the apartment through the sliding glass door after removing his shoes.  He said he had not been honest at the beginning of the interview because he was embarrassed.

Defendant initially denied entering Laura's bedroom or touching her.  Later, he said he "probably accidentally" touched her breast; he ultimately admitted putting his hand on her breast "[m]aybe twice" "[j]ust for a second."  Defendant said he recently had introduced himself to Laura and "thought she was a cool person" with "big titties."  He "kinda wanted her to like" him.  He had "never seen her with a — with a male, or nothing."  He grabbed her breasts because "they was just there."  Defendant said he had smoked marijuana the night of the incident and was high when he entered Laura's apartment.


### B.      Defendant's Prior Sexual Offenses

Luanna S., a clerk at the Antelope Valley High School in Lancaster, testified that defendant had been a student at the school.  In November 2007, he entered her work area and asked for a pen.  A few minutes later, she felt someone breathing on her neck.  She

---

3      The jury heard the taped interview and was given a transcript of the interview, which is part of the clerk's transcript on appeal.

turned around to see defendant trying to adjust his clothing, with his erect penis exposed. When she saw him, defendant quickly covered his crotch with his hands and pulled his shirt down. She reported the incident to law enforcement and defendant was arrested in November 2007 for indecent exposure. Defendant told law enforcement his pants were falling down because his belt was loose and he was trying to pull them up.

Erika M., a probation officer, testified that she worked at juvenile hall in Sylmar in 2008. In October 2008, she was summoned to defendant's room, where she saw him standing on his bed, exposing himself.

### C. Jury Instructions Regarding Defendant's Prior Offenses

With regard to defendant's prior offenses, the judge instructed the jury pursuant to CACI No. 1191 as follows:

"The People presented evidence that the defendant committed the crimes of P.C. 314 (Indecent Exposure), that were not charged in this case. . . . [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit sexual battery as charged in count 2, and assault to commit a felony during the commission of first degree burglary as charged in count 3. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of sexual battery as charged in

5

count 2 and assault to commit a felony during the commission of first degree burglary as charged in count 3. The People must still prove each charge beyond a reasonable doubt.

"Do not consider this evidence for any other purpose except for the limited purpose of determining if the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit counts 2 and 3."

### D. *Verdict and Sentence*

On February 4, 2013, the jury found defendant guilty of counts 1 and 2. The jury was unable to reach a verdict as to count 3. On May 10, 2013, the court sentenced defendant as follows: (1) as to count 1, a base term of six years; (2) as to count 2, six months in county jail, to be served concurrently with count 1. The court also imposed a variety of fines and dismissed count 3 of the amended information.

Defendant timely appealed.

## DISCUSSION

### I. Defendant's Burglary Conviction Was Supported by Substantial Evidence

Defendant contends that his burglary conviction must be reversed because there was no substantial evidence that he entered Laura's residence with the specific intent to commit rape or another felony as the burglary statute requires. The crime of burglary consists of an unlawful entry "accompanied by the 'intent to commit grand or petit larceny or any felony.'" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041, quoting Pen. Code, § 459.) A defendant commits first degree burglary if the dwelling is inhabited. (*Id.*, § 460.) "One may b[e] liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*Montoya*, *supra*, at pp. 1041-1042.)

6

A defendant's intent to commit a felony at the time of entry is a necessary element of burglary. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741, citing *People v. Holt* (1997) 15 Cal.4th 619, 699 (*Holt*).) However, "'"[w]hile the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." [Citation.]'" (*Holt*, *supra*, at p. 669.) Whether the entry was accompanied by the requisite intent is a question of fact for the jury. (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.)

On appeal, we must affirm the conviction if "'"after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] In making this assessment the court looks to the whole record, not just the evidence favorable to the respondent to determine if the evidence supporting the verdict is substantial in light of other facts. [Citations.]" (*Holt*, *supra*, 15 Cal.4th at p. 667.)

Defendant contends that the evidence, including that of his conduct during and after his entry, does not support a reasonable inference that he intended to commit a felony when he entered Laura's apartment. He notes that the only felony defined for the jury was rape, defined as sexual intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury, and he urges that nothing he did upon entering the residence could be considered an act of force, violence, duress, or menace, or could create a fear of immediate and unlawful bodily injury.

We do not agree. The evidence was that just hours after speaking briefly to a young woman whom defendant did not know, he entered her home, without her consent, in the middle of the night. Defendant did not knock on the front door or otherwise signal to the inhabitants that he wished to enter; instead, he removed his shoes (from which the jury could infer that defendant wished to move through the apartment without being heard) and entered the apartment through a side door. He then walked to Laura's bedroom, where Laura was asleep and vulnerable, and opened the door. He exited the

7

apartment only after Laura screamed and pushed him towards the front door, grabbing Laura's breasts several times as he did so. After his arrest, he admitted to police that he thought Laura was "a cool person" with "big titties" and that he had never seen her with a male companion.

From defendant's stealthy entry in the middle of the night into the apartment of a woman with whom he was not acquainted, the jury could readily infer that defendant's intent was illicit or illegal. Further, from defendant's admission that he thought Laura had attractive breasts, his silent entry into her bedroom as she slept, and his repeated grabbing of her breasts as she pushed him from the apartment, the jury could reasonably have concluded that defendant entered the residence to commit rape or another felony sexual offense.

The present case is analogous to *People v. Moody* (1976) 59 Cal.App.3d 357 (*Moody*), an appeal from a first degree burglary conviction. There, a 15-year-old girl was babysitting four children in their home. The babysitter and children fell asleep while watching television; at about 3:00 a.m., the babysitter awakened and sent the children up to their bedrooms. After the children had gone to their bedrooms, the babysitter heard a sound, turned, and saw defendant standing in the hall with his arms outstretched. The babysitter gasped or screamed, and defendant turned and fled. (*Id.* at p. 360.)

On appeal, defendant contended that the prosecution had failed to prove each element of first degree burglary. The court disagreed and affirmed: "Appellant entered the structure, to wit, a dwelling house, at night after all the doors had been locked and when discovered he had his arms outstretched toward the intended victim, a 15-year-old girl who was dressed only in a nightgown. When discovered he ran. Thereupon when confronted by a police officer appellant once again took flight. From the above facts, the jury could have concluded and there was substantial evidence to support a finding that appellant had either entered the house with an intent to commit theft or to commit rape." (*Moody*, *supra*, 59 Cal.App.3d at p. 363.)

*People v. Padilla* (1962) 210 Cal.App.2d 541 (*Padilla*) is also analogous. In that case, the victim awoke to find defendant sitting on her bed. She asked, "'Who is it?'"

8

and defendant answered, "'It's me.'" (*Id.* at p. 542.)  As she struggled to get free and began screaming, defendant ran from the house.  (*Ibid.*)  Defendant was convicted of burglary.  On appeal, he contended there was no evidence that would warrant an inference of intent to rape.  The Court of Appeal affirmed the conviction:  "There can be no doubt that appellant entered the house of [the victim] in the nighttime and without consent.  The evidence is clearly sufficient to warrant the conclusion that appellant entered the house for the purposes of raping [the victim]."  (*Id.* at p. 544.)

As in both *Moody* and *Padilla*, defendant entered a stranger's home in the middle of the night and approached a young woman dressed in night clothes, exiting only when she began to scream and struggle.  As in those cases, therefore, the jury reasonably could infer an intent to rape.

## II.     The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Defendant's Juvenile Sex Offenses

Defendant contends that the trial court erred in admitting evidence of his prior juvenile sex offenses because they were not relevant to the present case.  He concedes that evidence of prior sexual offenses may be admitted to show a propensity to commit sexual offenses *in some cases*, but he urges that propensity evidence should be admitted only if the prior and charged offenses are sufficiently similar.  In the present case, he urges, indecent exposure and attempted rape share no elements, and "it cannot be said, without expert opinion, that the defendant's commission of indecent exposure rationally supported an inference that he had a propensity or predisposition to commit rape."  For the reasons that follow, we do not agree.

### A.     Statutory Framework

Evidence Code section 1101[4] prohibits the admission of character evidence, including evidence of specific instances of conduct, to prove a defendant's conduct on another occasion.  (§ 1101, subd. (a); *People v. Falsetta* (1999) 21 Cal.4th 903, 913

---

[4]     All subsequent undesignated statutory references are to the Evidence Code.

(*Falsetta*).) An exception to the rule exists when evidence of an uncharged offense is relevant to prove a fact, such as motive, intent, common plan, identity, or absence of mistake or accident, other than disposition to commit the charged conduct. (§ 1101, subd. (b).)

Section 1108, subdivision (a) provides an additional and broader exception to the general rule by allowing propensity evidence in sex offense cases. (*Falsetta*, *supra*, 21 Cal.4th at p. 907.) Section 1108, subdivision (a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The trial court's ruling on the admissibility of prior bad acts evidence is reviewed for abuse of discretion. (*People v. Carter* (2005) 36 Cal.4th 1114, 1149.) Thus, it "'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)


B.      *Defendant's Juvenile Priors Were Probative of His Intent in This Case*

Defendant contends that for evidence of another crime to be admissible under section 1108, it must have some tendency in reason to show that the defendant is predisposed to engage in conduct of the type charged. He urges there exist no similarities between indecent exposure and attempted rape, and thus that his commission of indecent exposure was irrelevant to his propensity to commit rape. For the reasons that follow, we disagree.

1. Section 1108 Expresses a Legislative Judgment That an Individual Who Has Committed an Enumerated Sex Offense Has a Propensity to Commit Other Sex Offenses

Although we agree with defendant that indecent exposure and rape are distinct crimes, we disagree that defendant's commission of indecent exposure was irrelevant to his propensity to commit rape. To the contrary, we believe that section 1108 expresses a legislative judgment that *any* enumerated sexual offense is relevant to a defendant's propensity to commit another enumerated sexual offense, regardless of the degree of similarity between the two offenses.

In interpreting section 1108, we begin with the statute's plain language. As we have said, section 1108, subdivision (a) permits, in a criminal action in which the defendant is accused of "a sexual offense," introduction of evidence of "the defendant's commission of *another sexual offense or offenses*" if the evidence is not inadmissible pursuant to section 352. (Italics added.) Subdivision (d) defines "sexual offense" as a crime that involved "*[a]ny conduct* proscribed by [Penal Code] Section 243.4 [sexual battery], 261 [rape], 261.5 [unlawful sexual intercourse with a minor], 262 [rape of a spouse], 264.1 [rape in concert with another], 266c [unlawful sexual intercourse, sexual penetration, oral copulation, or sodomy], 269 [aggravated sexual assault of a child], 286 [sodomy], 288 [lewd acts on a child under 14 years], 288a [oral copulation], 288.2 [distributing matter depicting minors engaging in sexual activity], 288.5 [continuous sexual abuse of a child], or 289 [forcible sexual penetration], or subdivision (b), (c), or (d) of Section 311.2 [distributing obscene matter] or Section 311.3 [sexual exploitation of a child], 311.4 [employing a minor to distribute obscene matter], 311.10 [advertising obscene matter depicting a minor], 311.11 [possessing matter depicting minor engaging in sexual conduct], 314 [indecent exposure], or 647.6 [annoying or molesting a minor]," or "[a]ny conduct proscribed by Section 220 of the Penal Code [assault with intent to commit rape, sodomy, or oral copulation]," or "[c]ontact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person," or "[c]ontact, without consent, between the genitals or anus of the defendant and any part of

11

another person's body," or "[d]eriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person," *or* "[a]n attempt or conspiracy to engage in conduct described in this paragraph." (Italics added.)

By its plain language, therefore, the statute renders admissible in the trial of a sexual offense evidence of a defendant's commission of "*another* sexual offense"—i.e., a crime involving "*any of*" the enumerated crimes. (Italics added.) It would have been a simple matter for the Legislature to limit the evidence admissible under section 1108 to "*another similar* sexual offense or offenses" had it so intended. Because section 1108 does not contain any such limiting language, we presume that the Legislature did not intend such a limitation. (E.g., *Soto v. State of California* (1997) 56 Cal.App.4th 196, 202 [rejecting plaintiff's contention that the immunity provided by Government Code section 8655 applied only in an emergency: "If the Legislature had intended to so limit the scope of the section, we presume it would have said so."].)

The legislative history supports our conclusion. According to section 1108's author, "'At the hearing before the Judiciary Committee, there was discussion whether more exacting requirements of similarity between the charged offense and the defendant's other offenses should be imposed. *The decision was against making such a change*, because doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [Assembly Bill No.] 882 is designed to overcome, . . . and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not "specialists," and commit a variety of offenses which differ in specific character.'" (Historical and Statutory Notes, 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1108, p. 352, italics added.)

In *Falsetta*, *supra*, 21 Cal.4th 903, a constitutional challenge to section 1108, the California Supreme Court concluded that admitting evidence of a defendant's prior sexual offenses does not offend due process because, among other things, such offenses are highly relevant to defendant's propensity to commit other sexual offenses. The court noted that in enacting section 1108, the Legislature had expanded the admissibility of

12

disposition or propensity evidence in sex offense cases "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Id*. at p. 911.) Such expansion was appropriate because of the relevance of prior offense evidence: "Although defendant disputes the point, the case law clearly shows that evidence that he committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses. As noted in [*People v.*] *Alcala* [(1984) 36 Cal.3d 604], 'Such evidence "is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much.*"'" (*Falsetta*, *supra*, at p. 915.)

In *People v. Loy* (2011) 52 Cal.4th 46 (*Loy*), the California Supreme Court expanded its holding in *Falsetta* to permit the introduction of evidence of prior sexual offenses under section 1108 even where defendant contended that the prior and charged crimes were not similar and, therefore, the commission of the first was not probative of defendant's propensity to commit the second. In *Loy*, defendant was convicted of the 1996 murder (while engaged in a lewd and lascivious act) of his 12-year-old niece. At trial, the prosecution presented evidence that in 1975 and again in 1981, defendant had been convicted of rape, oral copulation, and sodomy of two women, ages 16 and 32. (*Id*. at pp. 54-55.) Defendant contended the trial court erred in admitting this evidence because the prior crimes—raping two women to whom he was not related—were not similar to the charged crime, murdering his 12-year-old niece.

The court disagreed, explaining that even if the crimes were not similar, that fact "is not dispositive. Before section 1108 was enacted, Evidence Code section 1101 governed the admission of prior criminal conduct, and a body of law developed concerning how similar the prior conduct had to be to the charged crime; the required degree of similarity varied depending on the use for which the evidence was offered. [Citation.] 'All of that radically changed with respect to sex crime prosecutions with the advent of section 1108. . . . [S]ection 1108 now "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses *for any relevant purpose*" [citation], italics added), subject only to the prejudicial effect versus probative value weighing process

13

required by [Evidence Code] section 352.' [Citation.] 'In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.' [Citation.] Or, as another court put it, '[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. *It is enough the charged and uncharged offenses are sex offenses as defined in section 1108*.' (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41.)" (*Loy*, *supra*, 52 Cal.4th at p. 63, italics added.) Thus, although defendant's previous sexual offenses may not have been sufficiently similar to be admissible under section 1101, they nonetheless were admissible under section 1108. (*Ibid*.; see also *People v. Story* (2009) 45 Cal.4th 1282, 1293 [prior sexual offense evidence is "particularly probative" in sex cases].)

Under the authorities discussed above, section 1108 plainly applies in the present case. Defendant's prior acts of indecent exposure (Pen. Code, § 314) and the charged acts of sexual battery and assault with intent to commit sexual battery (*id.*, §§ 243.4, subd. (e)(1), and 220, subd. (b)) are within the express language of the statute. They thus were presumptively probative. Moreover, the prior and charged crimes had important similarities, in that both the priors and the offense charged here involved defendant obtaining sexual gratification by forcing himself sexually on women without their consent. Thus, although the specific manner in which defendant forced himself on his victims differed, in all three cases he apparently derived some sexual satisfaction from his victims' unwilling participation. The trial court did not err in finding defendant's prior sexual offenses relevant and probative.

### 2.    *People v. Earle* Does Not Compel a Different Result

In urging that his juvenile priors were not relevant, defendant relies heavily on *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*). There, the defendant was charged with two separate crimes—indecent exposure and assault to commit rape. Defendant

14

moved for separate trials, arguing that a joint trial would be prejudicial. The trial court denied the motion, and the defendant appealed. (*Id*. at pp. 384-385.)

On appeal, the court noted that a joint trial could not have prejudiced the defendant if evidence of the indecent exposure would have been admissible at the assault trial. (*Earle*, *supra*, 172 Cal.App.4th at pp. 387-388.) It concluded that such evidence would *not* have been admissible, finding that in the absence of expert testimony, a jury could not rationally conclude that the commission of indecent exposure rationally supports an inference that a perpetrator has a propensity or predisposition to commit rape. (*Id*. at p. 398.) The court said: "[A] propensity to commit one kind of sex act cannot be supposed, without further evidentiary foundation, to demonstrate a propensity to commit a *different act*. The psychological manuals are full of paraphilias, from clothing fetishes to self-mutilation, some of which are criminal, some of which are not. No layperson can do more than guess at the extent, if any, to which a person predisposed to one kind of deviant sexual conduct may be predisposed to *another* kind of deviant sexual conduct, criminal or otherwise. Is one who commits an act of necrophilia (Health & Saf. Code, § 7052) more likely than a randomly selected person to commit an act of rape? Child molestation? Indecent exposure? Is a pedophile more likely than a rapist or a member of the public to commit necrophilia? Without some *evidence* on the subject, a jury cannot answer these questions." (*Earle*, *supra*, at p. 399.)

To the extent *Earle* suggests or concludes categorically that indecent exposure is irrelevant without expert testimony to prove a different sexual offense, we disagree. The California Legislature, in enacting section 1108, made a legislative judgment that sexual offenses of particular classes are suggestive of a defendant's propensity to commit other sexual offenses of those classes. It therefore permits the introduction of prior sexual offenses without requiring expert testimony as a prerequisite.[5] It is not our province to usurp the Legislature's judgment in this regard. (See, e.g., *People v. Wheeler* (1992) 4

---

[5]     Indeed, at least one court has held that although the prosecution may introduce evidence of a defendant's prior sexual offenses under section 1108, it may not offer expert testimony about a defendant's disposition to engage in unlawful sexual conduct. (*People v. McFarland* (2000) 78 Cal.App.4th 489, 493-497.)

15

Cal.4th 284, 300, modified by statute on other grounds as stated in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459-1460 [declining to find misdemeanor convictions admissible for impeachment purposes where statute permitted admission of only felony convictions: "[T]he Legislature itself carefully weighed the distinction between felony and misdemeanor convictions when it decided to create a hearsay exception for felony convictions only. . . . We decline the People's invitation to usurp the Legislature's considered judgment."].)

Further, requiring a battle of the experts to establish the relevance of different sexual offenses to one another in every case would abrogate the statute's underlying policy to make prior sexual offenses more easily admissible in subsequent sexual offense prosecutions. Section 1108 "was intended in sex offense cases to *relax* the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, *supra*, 21 Cal.4th at p. 911, italics added.) The "Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Id*. at p. 915.)

> C.  *The Trial Court Did Not Abuse Its Discretion by Concluding That the Probative Value of Defendant's Prior Sexual Offenses Was Not Outweighed by Their Prejudicial Effect*

Of course, merely because prior sexual offenses are relevant does not mean they are admissible: Under section 1108, the trial court "may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under section 352." (*Falsetta*, *supra*, 21 Cal.4th at pp. 916-917.) "In exercising this discretion

16

as to a sexual offense, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917.) The court's ruling under section 1108 is subject to review for abuse of discretion." (*Loy*, *supra*, 52 Cal.4th at p. 61.)

Our Supreme Court has recognized that evidence of previous criminal history inevitably has some prejudicial effect. Under section 1108, however, "this circumstance alone is no reason to exclude it. '[S]ection 1108 affects the practical operation of [Evidence Code] section 352 balancing "'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice". . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of admission*.'" (Historical Note, 29B pt. 3, West's Ann. Evid. Code [(1998 pocket supp.)] foll. § 1108, p. 31.)' (*People v. Soto* (1998) 64 Cal.App.4th 966, 984, italics added.)" (*Loy*, *supra*, 52 Cal.4th at p. 62.)

In the present case, a key issue for the jury was defendant's specific intent—i.e., whether defendant intended to commit a felony when he entered Laura's apartment. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741, citing *Holt*, *supra*, 15 Cal.4th at p. 699.) As we have said, defendant's juvenile priors were circumstantial evidence of his

17

disposition or propensity to commit sexual offenses. (*Falsetta*, *supra*, 21 Cal.4th at p. 920.) As such, they were probative of his intent in this case.

Defendant contends that even if his juvenile priors were probative, their probative value was substantially outweighed by their prejudicial effect because they likely "inflame[d] the jury" and "bolster[ed] a very weak case" against him. We do not agree. As an initial matter, the facts of the prior offenses were not particularly inflammatory. Both priors involved defendant exposing himself, during the day, while in a public place, and without touching his victims. While these events were no doubt unpleasant for the women who experienced them, they presumably were less frightening than defendant's conduct in the present case, where he entered a woman's bedroom in the middle of the night, where she was alone with her very young child, and then repeatedly fondled her breasts.

Further, the priors did not introduce a sexual motive where one was not otherwise obvious to the jury. Under the facts of the case—a stealthy, middle-of-the-night entry into the bedroom of a sleeping young woman—the jury reasonably would have inferred that defendant intended to rape the victim. Indeed, rather than prejudicing defendant, the priors actually could have bolstered his defense by suggesting an alternative, nonfelonious[6] reason why defendant was in Laura's bedroom: to expose himself to her, not to rape her.

III. **The Sentence for Count 2 Should Be Stayed Pursuant to Penal Code Section 654**

Defendant contends, and the Attorney General concedes, that his sentence on count 2 (sexual battery) should have been stayed under Penal Code section 654. We agree. "Section 654 . . . bars multiple punishment when a defendant is convicted of two or more offenses that are incident to one objective. (*Neal v. State of California* (1960) 55

---

6 Penal Code section 314, subdivision (1) "treats as a misdemeanor an act of 'willfully and lewdly' exposing the 'person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby.'" (*People v. Eckard* (2011) 195 Cal.App.4th 1241, 1244-1245.)

18

Cal.2d 11; *People v. Latimer* (1993) 5 Cal.4th 1203 [reaffirming *Neal*].) 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective of the actor*. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Neal*, *supra*, 55 Cal.2d at p. 19, italics added.)" (*People v. Casica* (2014) 223 Cal.App.4th 320, 323.) Because defendant's "intent and objective" in committing both the burglary and the sexual battery appear to have been the same—committing a sexual assault—the sexual battery should not have been separately punished. Defendant's sentence for sexual battery therefore should be stayed.

## DISPOSITION

The trial court is directed to correct the abstract of judgment by ordering the sentence as to count 2 stayed pursuant to Penal Code section 654, and the clerk is directed to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:

WILLHITE, Acting P. J.

_____

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

MANELLA, J.