Filed 4/15/16  In re R.M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>        Defendant and Appellant. | A145731<br><br>(Contra Costa County<br>Super. Ct. No. J13-01328) |

Appellant R.M., a minor, was found to have committed burglary and felony vandalism after he and two other boys entered a school over a weekend.  Appellant contends (1) there was insufficient evidence to support a finding that felony vandalism occurred or that he was personally involved in the vandalism, (2) the juvenile court erred in failing to refer him for learning disability testing, and (3) an electronic search condition was improper and overbroad.  We affirm the juvenile court's findings and disposition, but we direct entry of a narrower electronic search condition.

## I.  BACKGROUND

Appellant was the subject of a juvenile wardship petition, filed December 18, 2013, pursuant to Welfare and Institutions Code section 602, subdivision (a).  The petition alleged the minor had committed second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)), vandalism (Pen. Code, § 594, subd. (b)(1)), and obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)).

Appellant was detained by police officers after they discovered him and two other boys vandalizing a schoolroom on a Sunday. When the officers entered the room, appellant jumped out the window and ran past two of them stationed outside, but he was caught after a chase.

As the school district maintenance manager described the damage, the boys had essentially ransacked the room. Items were upset, paper and debris had been thrown around, and feces was placed on the teacher's desk. The boys dusted desktops with cleanser and smeared paint, glue, and bleach about. Three or four screens had been removed from the windows, scattered about the grounds, and "sliced." At least one and possibly two computers and a printer had been damaged by being doused with water and paint or glue. A team of three custodians was brought in to clean up, at a cost estimated by the court at $428. The district maintenance manager estimated the total damage at $1,000 to $1,800.

The juvenile court found true each of the allegations. Following the trial, appellant was permitted to remain at home pending the disposition, but his conduct during that time caused the juvenile court to order his detention. During the subsequent period of detention, appellant was involved in four separate incidents demonstrating a defiant refusal to follow facility rules.

The probation department recommended appellant be removed from his parents' custody to a youth rehabilitation facility for a period of six months. The probation report recognized appellant was articulate, solicitous of his mother, and well-mannered. His school attendance, however, was spotty, his grades were poor, and he had episodes of defiant behavior at school. The probation department found appellant "a low risk level for re-offense," but it concluded he would benefit from "an intervention that seeks to improve his academic achievement and behavior at school." It was believed the rehabilitation facility would provide accountability and structure that were missing in his home.

Appellant's counsel asked that he be permitted to remain at home. In a letter to the court, counsel explained appellant had a history of disruptive behavior in school,

growing out of an inability to follow classroom instruction. Appellant reported that he sometimes confuses letters, words, and numbers, and takes longer to read and write than his peers because of the extra effort required to focus. Counsel suggested appellant's conduct was consistent with attention deficit hyperactivity disorder or another learning disability and his misconduct arose from frustration with his difficulty in learning. Counsel proposed that appellant be permitted to remain in his school after being tested for both a learning disability and any other psychological condition that might require treatment.

After receiving testimony from appellant, the juvenile court concluded that appellant's home life did not provide sufficient discipline and committed him to a six-month term at a youth ranch. While recognizing the difficulties faced by appellant at school, the court believed he would receive the necessary testing and attention at the ranch school. As part of its dispositional order, the court required appellant to submit his "cell phone, electronic device, including access codes" to the probation department for warrantless search.

## II. DISCUSSION

Appellant contends the juvenile court erred (1) in concluding he entered the school with the intent to inflict the minimum required $400 in damage, (2) failing to order learning disability testing, and (3) imposing the electronic search condition.

### A. *Evidence of Burglary*

Appellant first contends the juvenile court was not presented with substantial evidence to support a finding he entered the school with the intent necessary for commission of felony vandalism, which requires damage in excess of $400, or that he personally participated in the vandalism.

"Our review of the minors' substantial evidence claim is governed by the same standard applicable to adult criminal cases. [Citation.] 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] ' "[O]ur role

3

on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment.' " (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

"Any person who enters a building or room with the intent to commit larceny or any felony is guilty of burglary." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1325.) Felony vandalism, requires the infliction of damage to real property of $400 or more in value. (*People v. Carrasco* (2012) 209 Cal.App.4th 715, 719, disapproved on other grounds as noted in *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518.) "[I]n showing that a defendant entered the premises with felonious intent, the [prosecution] can rely upon reasonable inferences drawn 'from all of the facts and circumstances disclosed by the evidence,' since felonious intent is rarely proven through direct evidence." (*In re Anthony M.* (1981) 116 Cal.App.3d 491, 501.)

Appellant first contends there was no substantial evidence of damage to the school of $400 or more. As discussed above, however, the damage to the schoolroom included removal and slashing of several window screens, pouring of liquid into school electronics, dusting of desks with cleanser, and smearing of paint, glue, and bleach. The court, provided with the cost and manpower required to clean the room, calculated over $400 in cleaning costs. Further, the school district maintenance manager estimated the total damage at $1,000 to $1,800; that testimony alone would provide substantial evidence to support the court's finding, since it was consistent with the magnitude of the damage described.

Appellant also contends there was no evidence of either his personal intent in entering the building or his participation in the vandalism. As noted above, however, burglary cases typically feature no direct evidence of intent. The juvenile court was permitted to infer appellant's intent from his entry into the school on a weekend, when there was no legitimate reason for him to be on school property, and from the extent of

4

the damage subsequently inflicted. In the absence of contrary evidence, these circumstances suggest appellant entered the room for the specific purpose of causing the significant damage inflicted.[1] Similarly, in the absence of evidence that in any way distinguished appellant from the two other boys who accompanied him, the juvenile court could infer he was a full and willing participant. This inference was strengthened by appellant's attempt to escape when confronted by police.

Defendant cites *In re Leanna W.* (2004) 120 Cal.App.4th 735 (*Leanna W.*), in which the court reversed a finding that a minor committed burglary and vandalism after she and 30 to 40 acquaintances entered her grandmother's house without permission and held a party. (*Id.* at pp. 738–739.) Several items were later found missing and significant damage was done to the home, but there was no evidence the minor either stole or caused the damage. (*Id.* at p. 740.) Given the lack of evidence about the minor's conduct in the home, the court concluded the evidence was insufficient to support burglary or vandalism. (*Id.* at pp. 741, 743–744.)

There are critical differences between the present circumstances and those of *Leanna W.* that support a contrary inference here. On the evidence presented in *Leanna W.*, there was no reason to infer the minor harbored an intent to steal or vandalize when she entered her grandmother's home. It was undisputed she intended to host a party. Further, there were 30 to 40 persons present at the party, any one of whom could have been responsible for the theft and damage. On this evidence, the court held, an inference of intent on the minor's part to steal or vandalize required some evidence she personally participated in these acts. (*Leanna W., supra,* 120 Cal.App.4th at p. 741.) In contrast, there is no basis for concluding appellant and his companions had any purpose when entering the school other than to commit vandalism. Because it was a Sunday, they had no legitimate reason for being present. Further, there were only three boys present.

---

[1] We reject appellant's argument it was necessary for him to know the value of the damage he inflicted. The requirement is that he have the intent to do damage requiring at least $400 to repair, not that he have the intent to do damage he knows to exceed $400.

On this evidence, the juvenile court could properly infer both that appellant harbored the intent to vandalize when entering the school and that he participated in the vandalism.

**B.  *Disability Testing***

Appellant contends that the juvenile court abused its discretion in failing to direct he be tested for a learning disability, citing California Standards of Judicial Administration, section 5.40, which directs the juvenile court to "[t]ake responsibility . . . to ensure that the child's educational needs are met."  (*Id.*, § 540(h)(1).)  "A child who comes before the court and is suspected of having exceptional needs or other educational disabilities should be referred in writing for an assessment to the child's school principal or to the school district's special education office."  (*Id.*, § 540(h)(2).)

" ' "We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision."  [Citation.]  " '[D]iscretion is abused whenever the court exceeds the bounds of all reason, all of the circumstances being considered.' " . . .'  [Citation.] . . . [¶] . . . 'Minors under the juvenile court's jurisdiction must receive the care, treatment, and guidance consistent with their best interest and the best interest of the public.  [Citation.]  Additionally, minors who have committed crimes must receive the care, treatment, and guidance that holds them accountable for their behavior, is appropriate for their circumstances, and conforms with the interest of public safety and protection.  [Citation.]  This guidance may include punishment that is consistent with the rehabilitative objectives.' "  (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)

Appellant does not challenge the portion of the juvenile court's dispositional order committing him to the youth ranch, and we find no abuse of discretion in that decision. Appellant's conduct in the months prior to the dispositional hearing was increasingly disruptive, leading to his detention immediately before the hearing.  Under these circumstances, the juvenile court could properly conclude that a period of time apart from his home, with greater supervision and discipline, would be of some benefit.

On the evidence presented, we find no additional obligation on the part of the juvenile court to refer appellant for testing under section 5.40 of the California Standards

6

of Judicial Administration. While the standard states that a child "suspected" of having a learning disability should be submitted for testing (*id.*, § 540(h)(1)), the basis for that suspicion must be more than speculation by his or her attorney. In *In re Angela M.* (2003) 111 Cal.App.4th 1392, for example, a court-appointed psychologist submitted a report stating that the minor might suffer from bipolar disorder or attention deficit hyperactivity disorder. (*Id.* at p. 1395.) The court remanded the matter to the juvenile court for a determination of the minor's "special educational needs," finding the juvenile court "was clearly on notice that [the minor] may have special educational needs" as a result of the testimony of the psychologist. (*Id.* at p. 1398.)

No similar expert testimony was presented here. While appellant testified he "ha[s] difficulties reading a couple words and some letters," there was no evidence presented to suggest this might be a symptom of a learning disability requiring special attention. While appellant's attorney offered her opinion this might be the case, we decline to find an obligation on the part of the juvenile court to refer a ward for educational testing solely on the basis of a suggestion by the ward's attorney.

**C. *Electronics Search Condition***

Appellant contends the electronics search condition was invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded on other grounds as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290–292, and is unconstitutionally overbroad.

We summarized the law applicable to juvenile probation conditions in *In re D.G.* (2010) 187 Cal.App.4th 47: "Under Welfare and Institutions Code section 730, subdivision (b), the juvenile court, in placing a ward on probation, 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' [Citation.] Consistent with this mandate, the juvenile court is recognized as having ' "broad discretion in formulating conditions of probation" '[citation], and the juvenile court's imposition of any particular probation condition is reviewed for abuse of discretion. [Citation.]

"While adult criminal courts are also said to have 'broad discretion' in formulating conditions of probation [citation], the legal standards governing the two types of conditions are not identical. Because wards are thought to be more in need of guidance and supervision than adults and have more circumscribed constitutional rights, and because the juvenile court stands in the shoes of a parent when it asserts jurisdiction over a minor, juvenile conditions 'may be broader than those pertaining to adult offenders.' [Citation.] In [*In re Tyrell J.* (1994) 8 Cal.4th 68, disapproved on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 139], the Supreme Court explained another aspect of the difference: 'Although the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation." [Citation.] . . . [¶] In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. [Citations.] " 'Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile . . . .' " ' [Citation.]

"While broader than that of an adult criminal court, the juvenile court's discretion in formulating probation conditions is not unlimited. [Citation.] Despite the differences between the two types of probation, it is consistently held that juvenile probation conditions must be judged by the same three-part standard applied to adult probation conditions under *Lent, supra*, 15 Cal.3d 481: 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*In re D.G.*, *supra,* 187 Cal.App.4th at pp. 52–53.)

8

In addition to satisfying the *Lent* test, juvenile probation conditions that infringe constitutionally protected rights must be clearly stated and no more restrictive than necessary to achieve their purpose. "Under the void for vagueness constitutional limitation, '[a]n order must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' [Citations.] In addition, the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. [Citations.] 'If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used . . . .' " (*In re Luis F.* (2009) 177 Cal.App.4th 176, 189.)

### 1. Validity Under *Lent*

As noted, a probation condition is invalid under *Lent* if it has no relationship to the crime committed, relates to conduct that is not criminal, and is not reasonably related to future criminality; all three elements must be present before a condition will be found invalid. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) We agree with appellant that the first two elements of *Lent* are satisfied here. There was no evidence to suggest appellant used an electronic device in the commission of the crime, and the use of electronic devices is not illegal.

We conclude, however, that the third element of *Lent* is not satisfied because the electronics search condition is reasonably related to future criminality.[2] In *Olguin*, our state Supreme Court held that a probation condition "that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality' " and does not satisfy the third prong required to invalidate a condition under *Lent* "even if [the] condition . . . has no relationship to the crime of which a defendant was convicted."

---

[2] In reaching this conclusion, we expressly rejected the reasoning of *In re Erica R.* (2015) 240 Cal.App.4th 907, which, without considering *Olguin*, concluded a similar electronics search condition imposed in similar circumstances did not reasonably relate to future criminality. (*Erica R.*, at pp. 913–914.)

9

(*Olguin, supra,* 45 Cal.4th at pp. 380–381.)  There, the challenged condition required the defendant, who had been convicted of driving under the influence of alcohol, "to notify his probation officer of the presence of any pets at [the] defendant's place of residence." (*Id.* at p. 378.)  Acknowledging that the challenged condition "ha[d] no relationship" to the defendant's crime and did not involve criminal conduct, the Supreme Court held that the condition was nevertheless valid under *Lent* because it protected the safety of the probation officer charged with "supervising [the] probationer's compliance with specific conditions of probation," which required "the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence" to "deter[] future criminality." (*Olguin,* at pp. 380–381.)  Unless our state Supreme Court departs from its holding in *Olguin*, we are bound to accept the principle that conditions reasonably related to enhancing the effective supervision of a probationer are valid under *Lent*.

Here, the electronics search condition is reasonably related to enabling the effective supervision of appellant's compliance with his other probation conditions. Among those conditions, the juvenile court prohibited appellant from using marijuana, the use of which he had acknowledged prior to his detention, and other illegal drugs.  The court also precluded appellant from contact with the boys with whom he vandalized the school, J.C. and C.G.  The electronics search condition enables peace officers to monitor and enforce compliance with these conditions by, for example, allowing text messages or Internet activity to be reviewed to assess whether appellant is communicating about drugs or with people associated with drugs or with his two former companions.

Division Three of this court has rejected the conclusion that an electronics search condition satisfies the third element of *Lent* because it permits monitoring of a juvenile's compliance with other probation conditions.  (*In re J.B.* (2015)  242 Cal.App.4th 749 (*J.B.*).)  While acknowledging the rationale of *Olguin*, *J.B.* noted that, in discussing the third element of *Lent*, the *Olguin* court stated that " 'the relevant test is *reasonableness.*' "  (*J.B.*, at p. 757, quoting *Olguin, supra,* 45 Cal.4th at p. 383.) Applying this test, *J.B.* found the electronics search condition to be unreasonable because (1) there was no showing of a connection between the probationer's use of electronic

10

devices and his past or potential future criminal activity, and (2) the condition burdened the minor's privacy interests. (*Id.* at pp. 757–758.)

We are unpersuaded by this analysis for two reasons. First, in adopting a generic test of reasonableness, *J.B.* disregarded the actual holding of *Olguin*. In that case, the Supreme Court's conclusion that the probation condition reasonably related to future criminal conduct was unrelated to any connection between the condition and the probationer's past or future crimes. On the contrary, the probationer's keeping of pets was entirely unrelated to any crime he did or likely would commit. Rather, *Olguin* concluded a probation condition is reasonably related to future criminal conduct if it permits more effective monitoring of the probationer's compliance with other probation conditions.[3] (*Olguin, supra,* 45 Cal.4th at pp. 380–381.) Nothing more was required.

Second, contrary to the impression created by *J.B.*, *Olguin* did not announce a generic test of reasonableness for probation conditions. While all juvenile probation conditions must, of course, be "reasonable" (Welf. & Inst. Code, § 730, subd. (b)), the three-part test of *Lent* and the constitutional tests of vagueness and overbreadth have been developed to determine whether this overarching standard has been met. Nothing in *Olguin* suggests the court intended to supplant these tests with a subjective determination of reasonableness. While *Olguin* did mention reasonableness, that reference arose in the context of a discussion of the burden imposed on the probationer by compliance with the probation condition. It was this burden that the court held must be "reasonable," rather than the probation condition itself. (*Olguin, supra,* 45 Cal.4th at pp. 383–384.) Under the portion of *Olguin* cited by *J.B.*, therefore, the relevant burden for measuring the reasonableness of a probation condition is the practical burden of complying with the condition, not the extent to which the condition infringes the probationer's rights.

---

[3] This was consistent with the Supreme Court's earlier approval of the imposition of a warrantless search condition on juveniles in *In re Tyrell J.*, which found the considerable infringement of civil rights represented by such a condition to be justified because the condition served "the important goal of deterring future misconduct." (*In re Tyrell J., supra*, 8 Cal.4th at p. 87.)

## 2. Overbreadth

While we conclude the electronics search condition's infringement on privacy rights is permissible in these circumstances, that does not end the issue. Any "probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

We agree with appellant that the condition imposed by the juvenile court is overbroad. As phrased, the condition does not limit the type of data on or accessible through appellant's cell phone that may be searched in light of the permissible purposes. "Mobile application software on a cell phone, or 'apps,' offer a range of tools for managing detailed information about all aspects of a person's life," including financial, medical, romantic, and political. (*Riley v. California* (2014) ___ U.S. ___, ____ [134 S.Ct. 2473, 2490].) The information that might be contained in appellant's electronic accounts is similarly broad. The condition therefore permits review of all sorts of private information that is highly unlikely to shed any light on whether appellant is complying with the other conditions of his probation, drug-related or otherwise. As a result, we conclude that it is not narrowly tailored to accomplish appellant's rehabilitation.

The condition must limit searches to sources of electronic information that are reasonably likely to reveal whether appellant is involved with drugs or associating with the prohibited individuals. To satisfy the juvenile court's concerns, the scope of the electronics search condition can and should be limited to programs used for interpersonal communication. It need not include other accounts and information that may be contained in or accessed through a cell phone or other electronic device. We therefore modify the condition to limit the probation officer's search authority to media of communication reasonably likely to reveal whether appellant is involved with drugs or communicating with the other boys involved in the vandalism, such as text messages, voicemail messages, photographs, e-mail accounts, and social media accounts. While appellant must provide the probation officer with passwords necessary to gain access to

these accounts, to the extent any other types of digital accounts maintained by appellant are password protected, he is not required to disclose those passwords.

### III.  DISPOSITION

The search condition of the probation order, which currently reads, "Submit person, property, any vehicle under minor's control, cell phone, electronic device, including access codes, and residence to search and seizure by any peace officer any time of the day or night with or without a warrant," is modified to read:  "Submit your person and any vehicle, room, or property under your control to a search by the probation officer or a peace officer, with or without a search warrant, at any time of the day or night. Submit all electronic devices under your control to a search of any medium of communication reasonably likely to reveal whether you are involved with drugs or associating with [J.C.] or [C.G.], with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified.  Such media of communication includes text messages, voicemail messages, photographs, e-mail accounts, and social media accounts."

As so modified, the judgment is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

13