[No. H026222. Sixth Dist. July 13, 2004.]

In re LEANNA W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LEANNA W., Defendant and Appellant.

## COUNSEL

Gerald A. Clausen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUSHING, P. J.**—Leanna W. appeals an order of the juvenile court in which she was found to have committed first degree burglary and vandalism of her grandmother's home, asserting there is not substantial evidence to support the court's finding that the allegations were true. The case arises out of Leanna's hosting a going-away party at her grandmother's home while her grandmother was away.

At the time of the party, Leanna, a 17-year-old ward, had recently run away from her juvenile placement. Her grandmother, Ms. P., purchased Leanna a one-way bus ticket to Montana, where Leanna's mother lived. On the weekend immediately preceding Leanna's bus trip, Ms. P. and her husband went out of town. Sometime on Friday of that weekend, Leanna entered her grandmother's home and proceeded to entertain guests during a going-away party. When the neighbor, Ms. Winchell, discovered the party, she broke it up, and all of the partygoers left. Three hours later, however, Ms. Winchell found the party had resumed. Ms. Winchell again broke it up. The following day, Leanna returned to clean up after the party.

By juvenile wardship petition, Leanna was charged with first degree burglary, vandalism and grand theft. (Welf. & Inst. Code, § 602; Pen. Code,

§§ 459, 460, subdivision (a), 484 et seq., 594.) The juvenile court found true the allegations of burglary and vandalism, citing the fact that "utilities were used," and alcohol was consumed in her presence. However, the court found the allegation of grand theft not true on the ground that it was not proven beyond a reasonable doubt that Leanna, as opposed to another person at the house at the time, had stolen the property from the home.

We find the evidence insufficient to support a finding that Leanna had the necessary intent to commit a theft or felony when she entered her grandmother's home. We also find the evidence insufficient to support a finding that Leanna, as opposed to any other person in the home, committed the damage or destruction of the property. Finding insufficient evidence to support the court's findings of burglary and vandalism, we reverse the judgment.

### STATEMENT OF THE FACTS AND CASE

As a result of a going-away party held in her grandmother's home in the spring of 2003, Leanna was charged by way of juvenile wardship petition with first degree burglary (Pen. Code, § 459—count 1), vandalism (Pen. Code, § 594, subds. (a), (b)(1)—count 2) and grand theft. (Pen. Code, §§ 484, 487—count 3.) After a contested jurisdictional hearing, the court found the allegations of burglary and vandalism true on the basis that alcohol was consumed and utilities were used while Leanna was in her grandmother's home. As a result, Leanna was committed to the California Youth Authority for the maximum period of nine years three months.

At the time of the going-away party, Leanna had run away from her juvenile placement in Colorado,[1] and had returned to California, where she saw her maternal grandmother, Ms. P., from time to time.

Leanna and her grandmother made arrangements for Leanna to go to Montana to visit her mother. On Friday, May 2, 2003, Ms. P. purchased Leanna a one-way bus ticket to Montana. Leanna was to leave on the following Monday, and Ms. P. agreed to take Leanna to the bus depot at 6:00 a.m. Because Ms. P. was planning to be away for the weekend, she told Leanna she would call her when she returned on Sunday evening.

When Ms. P. left her home on Friday, it was secure. Ms. P. and her husband checked all the doors and windows of the home to ensure they were

---

[1] Leanna had been the subject of numerous juvenile proceedings that originated from a petition on September 21, 1999, in which she was charged with seven counts including battery on her father and paternal grandmother, attempted theft of money, false imprisonment, elder abuse, and vandalism. Leanna admitted six counts, and the remaining count of battery on her grandmother was dismissed. A series of Welfare and Institutions Code sections 602 and 777 petitions followed arising out of allegations of escape, attempts to run away, and failures to follow juvenile facility rules.

locked. They left a kitchen light on continuously, and put other lights on timers to come on at certain times of the night. The only people with keys to the home were a neighbor, Ms. Winchell, who was to care for the cat while Ms. P. was away, Ms. P.'s daughter in Montana, and Ms. P's son in Tracy. Leanna did not have a key to her grandmother's home, nor did she have permission to enter the home, to have a party there, or to use the cable television or utilities while her grandmother was away.

At around 3:00 p.m. on Friday afternoon, Leanna phoned Ms. Winchell to tell her she needed to come to her grandmother's home to pick up her luggage for her trip to Montana. Leanna did not say anything to Ms. Winchell about throwing a going-away party.

Around 5:30 p.m. on Friday, Ms. Winchell looked over the fence into Ms. P.'s yard and saw Leanna and two other girls in the Jacuzzi; however, Ms. Winchell said nothing to Leanna at the time.

Later Friday evening, when Ms. Winchell was going to Ms. P.'s home to let the cat in, she noticed a number of cars in the area, and heard noise coming from the home. Ms. Winchell returned to her own house and called Ms. P.'s home, but no one answered. Ms. Winchell then went back to Ms. P.'s, and let herself in. When she entered the house, Ms. Winchell saw at least 30–40 people in the house, ranging in age from 15 to 20. There was alcohol on the table and counter, and Leanna told Ms. Winchell that she was having a going-away party because she was leaving for Montana. Ms. Winchell told Leanna the party was improper and all the guests had to leave. Leanna agreed, and told Ms. Winchell she would have the partygoers out within 15 minutes. Ms. Winchell left and returned to the house 15 minutes later, and all of the partygoers had left, except the two girls she had seen in the Jacuzzi with Leanna earlier in the evening. Ms. Winchell told Leanna that she and the girls needed to clean up the house, and they agreed.

The next morning, about 2:30 a.m., Ms. Winchell heard noise coming from Ms. P.'s home. When she returned to the home, Ms. Winchell found many of the partygoers who had left earlier had now returned. Ms. Winchell waited at the home until everyone but Leanna and her two girlfriends left. Leanna told Ms. Winchell she would return the next day to clean the house.

The next morning, Ms. Winchell saw a young man in Ms. P.'s yard who told her he was with Leanna and that they were cleaning up. Ms. Winchell told him to have Leanna call her when they were through.

Leanna telephoned Ms. Winchell about 1:30 p.m., and apologized for waking her the night before, and said she had cleaned the house.

Late Saturday night, Ms. Winchell went to Ms. P.'s home to feed the cat. While using her key, Ms. Winchell was unable to open the door. Ms. Winchell rang the doorbell, and after a few minutes, Leanna answered.

Ms. Winchell asked Leanna what she was doing in her grandmother's home. Leanna told Ms. Winchell her mother gave her permission to spend the night there. Ms. Winchell reminded Leanna that this was her grandmother's house, not her mother's, and that she did not believe her grandmother wanted Leanna in the house, and that Leanna would have to leave.

While at Ms. P.'s home, Ms. Winchell also saw a young boy inside watching television. Leanna asked the boy if she could stay at his house, and he said she could. Ms. Winchell told Leanna she would leave and return in 30 minutes to see if Leanna had left. When Ms. Winchell returned as promised, Leanna and the boy were gone.

When Ms. P. returned home on Sunday, they found many items missing, including a television stand worth $250 that was new in the box, about $600 cash from the master bedroom closet, some jewelry worth about $1,000, a $150 cell phone and about six bottles of liquor. Additionally, the Direct TV bill included a fee of $110 for a boxing match and six adult movies charged on May 3, 2003.

In addition to the missing items, the home sustained damage to the master bedroom door, blood on the bedroom sheets, broken glass on the interior floor, two missing long-stemmed drinking glasses, a chipped kitchen floor tile, and a liquid spill on the carpet. Beds were remade, furniture and items on it moved, drawers gone through, and the window screens moved or damaged.

This appeal followed Leanna's commitment to the California Youth Authority for the maximum period of nine years three months. Leanna asserts there is not substantial evidence to support the court's true finding on the allegations of burglary and vandalism.

### DISCUSSION

The critical deficiency in this case is the lack of evidence of what Leanna did while she was in her grandmother's home. So deficient was the evidence in this regard, that the court found the allegation of grand theft not true. Specifically, the court stated:

"[T]he Court does have a reasonable doubt as to . . . what [Leanna] actually did. I think that [defense counsel] is correct, and given numerous entries and exits, and for a period of time which the house was in [a] . . . potentially

unsecured position, someone could have come back. I have a reasonable doubt, and the Court does not sustain count three [grand theft]."

The same reasoning that supports the not true finding on the grand theft allegation equally should have resulted in not true findings on the burglary and vandalism allegations. Without sufficient evidence of what Leanna did while in her grandmother's home, the juvenile court's order must be reversed.

*The Evidence Was Insufficient to Support a Finding of Burglary*

Despite its finding that the evidence did not show Leanna's activities in her grandmother's house, the court concluded that the allegations of burglary were true because, "at a minimum, liquor was taken. It was in [Leanna's] presence, she was there when it was taken." This conclusion is based on the faulty premise that Leanna's presence when alcohol was used was sufficient to support a finding that the burglary allegations were true. However, Leanna's presence in the home when alcohol was consumed is insufficient to create the inference of burglarious intent.

In order to be guilty of burglary, an individual must unlawfully enter a dwelling with the intent to commit a theft or any felony. (Pen. Code, § 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041 [31 Cal.Rptr.2d 128, 874 P.2d 903].) A necessary element to this crime is that the intent to commit the theft or felony must exist at the time of entry. (*People v. Holt* (1997) 15 Cal.4th 619, 699 [63 Cal.Rptr.2d 782, 937 P.2d 213].) However, in reviewing the sufficiency of evidence to support a burglary finding, the requisite intent is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances. (*Ibid.*) As a result, evidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry. (*Id.* at p. 670.)

Here, the consumption of Ms. P.'s alcohol could create an inference of intent to commit a theft or felony at the time of entry into the home. Critical to this rationale, however, is a conclusion that Leanna actually took or consumed the alcohol. But the trial court expressly found that it could not tell what Leanna did while she was in the home. The fact that Leanna was present when the liquor was used does not show that she actually consumed it, much less that she had the specific intent to take it when she entered the house. The mere possibility that Leanna consumed the alcohol raises nothing more than a suspicion, which does not form a sufficient basis for an inference of fact. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

The additional basis for the court's finding of intent to commit burglary in this case was the fact that "utilities were used" in the form of lights and

"flushing the toilet." However, as in the case of the alcohol consumption discussed above, the record contains a dearth of evidence that Leanna actually used the home's utilities. Leanna's grandmother testified that she and her husband left the kitchen light on continuously in their absence, and that other lights in the home were left on timers to come on at different times throughout the night. Therefore, there was no evidence that it was necessary for anyone to turn on any lights at any time throughout the evening. Moreover, the lack of clarity of Leanna's activities in the house makes the finding of utility use insufficient to support an inference of intent.

■ This case presents the problem of basing a burglary on incidental utility usage. Certainly, entry with the intent to use the home's utilities may form the basis for a burglary conviction. (*People v. Martinez* (2002) 95 Cal.App.4th 581, 584–585 [115 Cal.Rptr.2d 574] (*Martinez*) [the defendant was found guilty of burglary after he entered a home with the intent to take a shower]; see also *People v. Dingle* (1985) 174 Cal.App.3d 21, 29 [219 Cal.Rptr. 707] (*Dingle*) [entry for the purpose of making unauthorized long-distance telephone calls].) However, the difference with these cases is that intent to use the home's utilities was proven with evidence other than the entry itself.[2]

Here, it is clear Leanna entered her grandmother's home without permission. And the evidence suggests there may have been some incidental utility use. However, the evidence also shows there were other people in the home during the time when Leanna was there. The prosecution presented no evidence that Leanna actually used the utilities, as in *Dingle*, or that she entered the house with the intent to use the utilities, as in *Martinez*.

Basing burglary on incidental utility use is difficult, not only because of the lack of certainty in the present case, but also because of the lack of any boundaries this creates for other cases. To allow a finding of burglary to stand on incidental utility use, without evidence that the individual actually used the utilities, is to imply intent to use utilities by entry into the home. Thus, if we were to affirm without evidence that Leanna actually used the utilities, any unlawful entry into a house could support a burglary, because from a practical standpoint, incidental utility use, along with the intent to use the utilities could be implied.

---

[2] In *Martinez*, the defendant testified at trial that he entered the home to take a shower and use the soap and shampoo. (*Martinez, supra*, 95 Cal.App.4th at pp. 584–585.) In *Dingle*, the defendant entered the home and made long distance telephone calls. In both cases, the court found the defendants' intent to use the home's utilities at the time of entry could support burglary convictions. (*Dingle, supra*, 174 Cal.App.3d at p. 29.)

We, however, do not say that there could not be a burglary where the entrant had the intent to use the home's utilities. All we say is proof of the intent must be shown.

In addition to power and water, the court also made note of "other items that were used while there," as support for the burglary allegation. One particular item that was used during the weekend Leanna's grandmother was not home was Direct TV services. However, there was no evidence presented that Leanna actually ordered services from Direct TV. As in the case of the consumption of alcohol, any one of the numerous people who were at the house for the party could have placed the Direct TV orders. The Direct TV use does not support an inference that Leanna possessed the necessary intent to commit theft at the time she entered the house.

■ Moreover, the evidence presented to prove the Direct TV orders was inadmissible in any event. Over Leanna's hearsay objection, Ms. P. was permitted to read from her Direct TV invoice at trial to demonstrate that someone had ordered a boxing match and six adult movies while she was away. The court erred by allowing such evidence. An invoice is hearsay, and it is not admissible to prove that the specific work or service appearing on the invoice was actually performed absent a foundational showing of an exception to the hearsay rule. (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 43 [69 Cal.Rptr. 561, 442 P.2d 641].)

■ We do not find substantial evidence to support a finding that Leanna committed burglary of her grandmother's home. The juvenile court erred in finding the allegation of burglary true.

*The Evidence at Trial Was Insufficient to Support a Finding of Vandalism*

■ To commit vandalism within the meaning of Penal Code section 594, an individual must maliciously damage or destroy any real or personal property not his or her own. Here, the juvenile court found true the allegation that Leanna committed vandalism, and further found that the destruction or damage amounted to $400 or more in violation of Penal Code section 594, subdivision (b)(1). The People concede that the juvenile court erred in finding that the value of the damaged property was $400 or more, and that the order should be modified to reflect a violation of Penal Code section 594, subdivision (b)(2)(A). However, we find the evidence insufficient to support a true finding of vandalism in the first instance, and reverse the order.

During the jurisdictional hearing, there was evidence presented that property belonging to Leanna's grandmother was damaged or destroyed during

the party.[3] However, like the alcohol consumption and utility use in connection with the burglary, there is no evidence that Leanna was the person who damaged or destroyed the property.

■ In this case, the court's finding that Leanna was responsible for vandalizing property in her grandmother's home is not based on any direct evidence. This conclusion results in Leanna being vicariously liable for the damage that might have occurred while she was in the house. Without evidence that Leanna actually damaged or destroyed her grandmother's property, she cannot be liable for vandalism.

We are sympathetic to the trial court's position, given the presentation of evidence. The prosecutor certainly could have put on a better case. We can imagine a record that could have filled in the holes in Leanna's activities while in her grandmother's home. For example, there were between 30 to 40 partygoers in the home on Friday evening. Additionally, Ms. P.s' neighbor, Ms. Winchell testified that she saw Leanna with two girlfriends at the home at least two times on Friday. Yet, none of Leanna's party guests or friends testified at trial regarding Leanna's activities. The trial court tried valiantly to make the best of a poor presentation by the prosecution, but once the court said it had a reasonable doubt about the theft charge based on uncertainty about Leanna's activities, the remainder of the case was similarly undermined.

The existence of multiple people at the house suggests that any one of them could have damaged the property. The evidence does not support a reasonable inference that Leanna damaged or destroyed her grandmother's property and, hence, does not support a finding of vandalism.

---

[3] The record reflects that some long-stemmed glasses were broken, a kitchen tile was chipped, carpeting was stained, a bedroom door was damaged, and a window screen was ripped.

## DISPOSITION

The order of the juvenile court is reversed.

Premo J., and Elia, J., concurred.

A petition for a rehearing was denied August 10, 2004.