Filed 7/15/13  P. v. Henderson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B243173 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA065576) |
| v. | |
| NIEL HENDERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph Brandolino, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Toni R. Johns Estaville, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Niel Henderson guilty of rape by force in violation of Penal Code section 261, subdivision (a)(2).[1] The jury found true the allegation that defendant committed the offense during the commission of a first degree burglary with the intent to commit either rape or theft. (§ 667.61, subd. (b).)[2] The trial court sentenced defendant to state prison for 15 years to life. In his timely appeal from the judgment, defendant contends the evidence is insufficient to support the allegation under section 667 that he committed the rape during the commission of a burglary with the intent to commit theft. Finding no merit to the argument, we affirm.

**FACTS**

Defendant raped 88-year-old Lily Peterson in her home and robbed her of her wedding ring on June 24, 1998. Public records indicated that defendant was in the Los Angeles area on June 12 and on July 11, 1998. Peterson passed away in 2000. In 2010, defendant was connected to the rape by a DNA match. This prosecution followed.

Leila Riela lived next door to Peterson for 36 years, visiting her often. At 9:50 a.m. on June 24, Riela received a telephone call from Peterson, asking her to come right over. Peterson sounded "bad." Riela found Peterson sitting in her rocking chair, "disheveled and bruised, red, swollen face, and crying." Peterson said she had been raped and robbed by a Black man, who wanted her wedding ring and jewelry. Peterson, a widow, always wore her wedding ring, but Riela noticed it was missing from her finger.

Riela insisted they call 9-1-1 immediately. Riela placed the call, beginning by telling the operator "a Black man raped my neighbor here." Peterson took the phone and described the attacker as a very young man, between 17 and 20 years old, wearing all

---

[1] All statutory references are to the Penal Code, unless otherwise stated.

[2] The jury found not true the allegation that the rape was committed during the commission of first degree burglary with the intent to commit rape by force (§ 667.61, subds. (a) and (d)). Thus, it appears the jury determined the rape was committed during the commission of a burglary perpetrated with the intent to commit theft.

2

dark clothes. Peterson explained she had been outside watering a geranium when she saw two young men across the street. After Peterson returned to her house, one of the men grabbed her when she walked into her bedroom. The man hit her in the head every time she asked for help. When someone from the fire department came on the line, Peterson said she had just been raped, she was 88 years old, and "he just beat me over the head. He kept hitting me." Peterson was told not to use the bathroom.

Judith Arrants, a sexual assault response team nurse, treated Peterson on the day of the rape. She observed bruising to four areas of Peterson's face and an injury to her wrist that had been placed in a splint. Peterson had injuries and swelling to the outer and inner vaginal areas. Arrants used swabs to collect samples from areas related to the assault. The swabs were picked up at the hospital by Officer Anthony Sciarrino, who booked the items into evidence.

On February 11, 2008, Criminalist Earnest Park reviewed the evidence and prepared two swabs taken from Peterson for analysis by another lab. DNA analysis in 2008 of an anal swab, containing no sperm, established Peterson as the sole donor. The external genital swab containing sperm showed two donors—the major donor was an unidentified male, and the minor donor was Peterson.

Detective Michael Zolezzi met with defendant on November 19, 2009. Defendant is African-American.[3] The detective took reference samples by swab from defendant's mouth, which he dried and booked into evidence. On June 17, 2010, Park prepared a swab taken from defendant for analysis and sent it to another lab for analysis.

In June 2010, a comparison was done between the swab taken from defendant by Detective Zolezzi and the external genital swab taken from Peterson in 1998. Defendant's DNA profile matched the major donor in the external genital swab. The

---

[3]     Detective Zolezzi testified to defendant's race because defendant was never seen in person by the jury. Defendant consistently refused to participate in trial proceedings, and was kept in the court's lockup with an audio feed of the trial throughout the proceedings.

chances of unrelated individuals in the Black population sharing that profile was one in 14.94 quadrillion.

## DISCUSSION

Defendant argues the evidence is constitutionally insufficient to support the jury's finding under section 667.61, subdivisions (b) and (e)(2), that the rape of Peterson was perpetrated during the commission of a first degree burglary committed with the intent to commit theft. Defendant reasons that Peterson's remark that she was "raped and robbed" is insufficient proof that he entered her residence with the intent to commit theft. The contention is incorrect.

"'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320.) The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.) . . .' [Citations.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) We are compelled to affirm unless there is no hypothesis under which the evidence is sufficient. (*Id.* at p. 508, citing *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Under section 667.61, subdivisions (b) and (e)(2), the punishment for forcible rape is increased to 15 years to life if the defendant committed the rape "during the commission of a burglary in violation of Section 459." "A burglary is committed if the defendant enters a residence or other enumerated structure 'with intent to commit grand or petit larceny or any felony.' (§ 459.)" (*People v. Ramirez* (2006) 39 Cal.4th 398, 463.) "In order to constitute burglary, the defendant must intend to commit the theft or felony at the time of entry. (*People v. Holt* (1997) 15 Cal.4th 619, 699.) However, the existence of the requisite intent is rarely shown by direct proof, but may be inferred from

4

facts and circumstances. (*Ibid.*) Evidence of theft of property following entry may create a reasonable inference that the intent to steal existed at the moment of entry. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.)" (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540-541.)

Peterson saw defendant and the second man across the street while she watered her plants. Defendant was in her house after she reentered the residence. The jury could infer from this circumstance that he entered intending to commit theft, and the sexual assault was a mere afterthought. Peterson was beaten by defendant, and it is undisputed that her ring was taken. Under the reasoning of *In re Matthew A.*, *supra*, 165 Cal.App.4th at pages 540-541, proof that defendant committed theft of Peterson's wedding ring is sufficient to support the reasonable inference he entered her home with the intent to commit theft.

Moreover, the fact defendant committed a violent sexual assault of Peterson does not render unreasonable the jury's finding that he entered her residence with the intent to commit theft. "Since there appears to have been no purpose for the entry other than the sexual assault and robbery, an inference that defendant intended either or both was reasonable." (*People v. Holt, supra,* 15 Cal.4th at p. 670.)

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J

KUMAR, J.*

---

*       Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.