Filed 9/19/22 P. v. Sterritt CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094005 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE015607) |
| v. | |
| KARA DENISHA STERRITT et al., | |
| Defendants and Appellants. | |

In this consolidated appeal, defendants Kara Denisha Sterritt and Diimario Shanntrell Williams contend their convictions for the robbery of L.H. were not supported by sufficient evidence of intent.[1] We disagree. However, Sterritt also contends that in sentencing, the trial court erred in imposing the upper term due to the amendments to Penal Code section 1170, subdivision (b), made by Senate Bill No. 567 (2021-2022 Reg. Sess.), and the matter should be remanded to the trial court for resentencing. The People

---

[1] On the court's own motion, *People v. Sterritt*, case No. C094005, and *People v. Williams*, case No. C094006, were consolidated under the case No. C094005.

1

agree, as do we. We will remand Sterritt's case for resentencing and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment. (*People v. McGehee* (2016) 246 Cal.App.4th 1190, 1195; *People v. Bogle* (1995) 41 Cal.App.4th 770, 775.)

In August 2019, Sterritt reached out to L.H. on a dating website. Sterritt asked L.H. if he wanted to hang out and gave him her phone number to text. Sterritt and L.H. exchanged texts, spoke on Facetime, and ultimately decided to go to Thunder Valley Casino together. At trial, L.H. identified Sterritt as the person he spoke to and met up with to go to the casino.

Sterritt and a friend picked L.H. up. L.H. gave Sterritt $300 or $400 in chips to gamble with. They were sitting together at the craps table; Sterritt was teaching L.H. how to play. Sterritt lost the money L.H. gave her and he lost $700. Afterwards, all three ate at a restaurant in the casino and then Sterritt and her friend drove L.H. to his home. L.H. asked Sterritt to come in to see his dog and she went in for five minutes; her friend stayed in the car. L.H. asked Sterritt for a kiss and she gave him a little kiss on the lips.

In the morning L.H. noticed his cell phone was missing. That day he bought a replacement phone. L.H. texted Sterritt to see if he left his cell phone in the backseat of her car. He told her he planned to get a new phone anyway since the missing phone was old. Sterritt responded that she was not sure if his phone was in her car because she had just gotten out of bed. Sterritt said she was stressed out because she was behind on car loan payments and her car would be repossessed if she did not pay up by the next day. L.H. responded that he would have given her the $700 he lost.

L.H. and Sterritt exchanged a series of texts in which she made repeated references to stress about her car loan and rent, and he repeatedly offered to pay her for

2

sex. Finally, Sterritt agreed to go back to Thunder Valley Casino with L.H. that night.[2] L.H. wanted Sterritt to pick him up because he was intoxicated from drinking at a birthday party earlier in the day. Sterritt agreed to pick up L.H. and take him to the casino. Sterritt asked for L.H.'s address.

That evening, Sterritt picked L.H. up and they went to Thunder Valley Casino. They did not gamble together this time. L.H. gambled in the high-limit blackjack area. He again gave Sterritt chips to gamble with, which she lost. L.H. had gotten $2,000 from an ATM at the casino and won $1,000, so he had $3,000 on him after he cashed out his chips. Sterritt was with him when he cashed out.

Sterritt gave L.H. a ride home from the casino. On the way, they stopped at a gas station. Sterritt walked off, saying she needed to use the restroom. L.H. pumped gas in Sterritt's car. He saw Sterritt talking on her cell phone. A gas station employee saw Sterritt make a call on her cell phone and put the cell phone away quickly in her purse. Cell phone records showed that Sterritt called Williams.

Cell phone records also showed that Williams's cell phone was in the area of L.H.'s home in Sacramento at the time of the robbery.[3] Earlier in the evening there were calls between Sterritt's cell phone in the area of Thunder Valley Casino and Williams's

---

[2] The record is somewhat unclear regarding the exact dates in August 2019 when Sterritt and L.H. went to Thunder Valley Casino. It appears that their first visit was on August 10 returning in the early hours of August 11. Their second visit was on August 11 returning to L.H.'s home in the early hours of August 12.

[3] In *People v. Garlinger* (2016) 247 Cal.App.4th 1185, we explained: "Cell phones operate like 'sophisticated radios' by sending and receiving a radio signal to and from a cell tower and base station in their general vicinity. [Citation.] The area of the particular tower's coverage is known as a 'cell.' As the cell phone user moves from cell to cell, the wireless company transfers the call to the new cell's tower and base station. [Citation.]" (*Id.* at pp. 1195-1196.) Thus, the general location of a cell phone can be determined based on the sector of the cell tower to which the phone is connected. (*Id.* at p. 1196.)

cell phone in the area of his residence in Elk Grove.[4] Records showed that after midnight Williams's cell phone moved from Elk Grove north towards Sacramento. After the robbery, cell phone records showed that both Sterritt's and Williams's cell phones were traveling south to Williams's Elk Grove residence.

Upon arriving at L.H.'s home, L.H. got out of Sterritt's car and opened his garage door to enter his home. Surveillance video from a neighbor's camera showed an individual running towards L.H.'s garage after Sterritt turned her car around in the cul-de-sac. As L.H. walked in, he turned to his right and saw a black male—at trial, identified by L.H. as Williams—with a metal object like a pipe raised up to strike L.H. on the right side of his head. The man hit L.H. above his right eye. L.H. was stunned; he staggered and saw blood gushing everywhere. L.H. kicked the man off and ran down his driveway. L.H. tripped and fell in the driveway and ended up on the street. The man chased L.H. L.H. fell on his back and the man was on top of him trying to strike him. L.H. grabbed the metal object so the man could not strike him again. During the struggle, something fell out of L.H.'s pocket. The man grabbed it and ran off down the street. L.H. believed it was his wallet because he had his wallet when he got out of the car but did not after the struggle.

After the attack, L.H. called 911. Officers arrived at L.H.'s home at approximately 2:15 a.m. on August 12, 2019. When police officers responded, L.H. provided them a photo of Sterritt on his cell phone. L.H. attempted to look up Sterritt's profile on the dating website but it was removed or deleted. Shortly after dropping L.H. off, Sterritt deleted her profile on the dating website.

---

[4] The parties stipulated that Williams lived at an address in Elk Grove, and in December 2018, he met there with a government official with Sterritt present and indicated that Sterritt was his girlfriend and lived there with him.

Prior to the robbery, on August 9, 2019, Sterritt's husband, Cameron, called Sterritt from jail twice asking her for money to bail him out, complaining that she had lost money at the casino that could have been used for that purpose and suggesting that she sell her phone to raise money.[5] Sterritt responded that he should not "yell or dictate at me when I'm trying to help out the solution, okay? I'm trying to figure it out." On August 12, 2019, Sterritt and Cameron's mother paid a $1,500 cash down payment on a bail bond for Cameron.

On August 28, 2019, police officers arrested Sterritt and Williams and searched their cars and Williams's residence in Elk Grove. Officers found L.H.'s missing cell phone in Williams's car. Williams had $221 in his wallet and Sterritt had $1,387 in her wallet. A receipt for $1,500 for Cameron Sterritt's bail was in Sterritt's purse.

On the first day of trial, Sterritt pleaded no contest to four misdemeanor counts alleged in the second amended information: forgery (Pen. Code, § 470, subd. (c),[6] counts three & four), fraudulently obtaining money (§ 532, subd. (a), count five), and attempt to fraudulently obtain money (§§ 664/532, subd. (a), count six).

Sterritt and Williams were tried jointly. The jury found Sterritt and Williams guilty of first degree residential burglary (§ 459, count one) and first degree robbery (§ 211, count two). The jury also found true allegations that Williams personally used a dangerous and deadly weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). Williams admitted allegations that he suffered a prior strike conviction in June 2014 (§§ 667, subds. (b)-(i), 1170.12, 1192.7, subd. (c)).

---

[5] The recordings were played to the jury and admitted into evidence but the transcripts were not. The trial court admonished jurors that the transcripts were only an aid to follow and understand the recordings and the recordings were the actual evidence. The recordings were not included in the record on appeal. However, both parties cite the transcripts as accurate records of what was said in the recordings.

[6] All undesignated statutory references are to the Penal Code.

The trial court sentenced Sterritt to state prison for a term of six years, the upper term on count two. The court imposed the same term for count one, stayed under section 654, and added one year consecutive in county jail on the misdemeanor counts, calculated as 90 days for each misdemeanor. The court suspended Sterritt's sentence conditional on her successful completion of probation and placed her on five years' probation.

The trial court sentenced Williams to 12 years in state prison, calculated as eight years on count two (the four-year middle term doubled by the strike), plus three years for personal infliction of great bodily injury and one year for personal use of a deadly weapon. The court imposed an eight-year term on count one, stayed under section 654.

Defendants filed timely appeals.[7]

## DISCUSSION

## I

### *Sufficient Evidence of Robbery*

Sterritt and Williams contend that insufficient evidence supported Williams's conviction for robbery and therefore insufficient evidence supported Sterritt's conviction for aiding and abetting robbery.[8] Their argument is that the evidence showed that

---

[7] These cases were fully briefed on July 5, 2022, and assigned to this panel on July 15, 2022.

[8] "If the defendant himself commits the offense, he is guilty as a direct perpetrator. If he assists another, he is guilty as an aider and abettor. It follows, therefore, that for a defendant to be found guilty under an aiding and abetting theory, someone other than the defendant must be proven to have attempted or committed a crime; i.e., absent proof of a predicate offense, conviction on an aiding and abetting theory cannot be sustained." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; see also *People v. Gentile* (2020) 10 Cal.5th 830, 843 ["Aiding and abetting is not a separate offense but a form of derivative liability for the underlying crime"].)

Williams formed the intent to take L.H.'s wallet not before or during the assault, but only after it concluded, making the crime theft, not robbery. We disagree.

"In determining the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Leon* (2008) 161 Cal.App.4th 149, 156.) We review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) " ' "This standard applies whether direct or circumstantial evidence is involved." ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 113.)

"Robbery is 'the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) "A conviction of robbery requires evidence showing that the defendant conceived the intent to steal either before or during the commission of the act of force against the victim. [Citation.]" (*Ibid.*) " ' "[I]f the intent arose only after the use of force against the victim, the taking will at most constitute a theft." ' [Citation.]" (*Ibid.*) Intent is rarely demonstrated by direct proof but may be inferred from circumstantial evidence. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; *People v. Lewis* (2001) 25 Cal.4th 610, 643; see also *People v. Johnson* (1972) 28 Cal.App.3d 653, 657 ["The intent to commit a particular crime is generally manifested by the circumstances connected with the offense [citation] and the specific intent to rob may be inferred from the circumstances connected with the robbery"].)

There is substantial evidence Williams formed the intent to rob L.H. before assaulting him. The cell phone calls between Sterritt and Williams when she was at

Thunder Valley Casino and while stopping at the gas station supported a reasonable inference by the jury that Sterritt informed Williams that L.H. had a substantial amount of cash in his wallet and apprised Williams of when they would arrive at L.H.'s home. Williams traveled from his residence in Elk Grove to L.H.'s address, armed himself with a metal pipe, and, as shown in surveillance video, ran into the garage after L.H. When L.H. noticed Williams, he had already raised the pipe to strike L.H. From these circumstances, the jury could conclude that Sterritt and Williams formed a plan for Williams to take L.H.'s money when she dropped him off and Williams brought a weapon and struck L.H. with it to use force to incapacitate L.H. and facilitate the theft. (See *People v. Holt* (1997) 15 Cal.4th 619, 670-671 [evidence was sufficient to support reasonable inference that the defendant intended to steal property from the victim by means of force where the defendant assaulted the victim to incapacitate her and facilitate theft].) The fact that L.H. was not fully incapacitated, fought back, and lost his wallet in the struggle does not negate evidence that supports a reasonable inference that Williams assaulted L.H. in order to steal from him.

We conclude sufficient evidence supports the convictions of Williams and Sterritt for robbery.

## II

### *Senate Bill No. 567*

Sterritt contends that we must remand for resentencing because the trial court's imposition of an upper term sentence did not satisfy the new requirements of section 1170, subdivision (b) added by Senate Bill No. 567. The People agree.

We conclude Senate Bill No. 567 is an ameliorative statute that applies retroactively to Sterritt's nonfinal case and Sterritt is entitled to resentencing under the amended statute. Accordingly, we vacate the sentence and remand the matter to the trial court to resentence Sterritt.

8

At the sentencing hearing, the trial court considered as aggravating circumstances: (1) the crime involved great violence (Cal. Rules of Court, rule 4.421(a)(1));[9] (2) the victim was particularly vulnerable (rule 4.421(a)(3)); (3) the manner in which the crime was carried out indicated planning (rule 4.421(a)(8)); and (4) Sterritt induced others to participate (rule 4.421(a)(4)). The court did not articulate any mitigating circumstances at the hearing. The report prepared by the Sacramento County Probation Department noted as mitigating circumstances that Sterritt had no record of prior criminal conduct (rule 4.423(b)(1)) and that Sterritt "has led a productive life and this is her first criminal offense" (rule 4.408).

Under the heading "Psychological/Medical," the probation report noted that following "Indication of problem: [¶] During the probation interview, the defendant [Sterritt] reported she has been attending therapy sessions since January 2019 weekly to address emotional and mental abuse she endured from her co-defendant, Williams and her husband."

While Sterritt's appeal was pending, the Legislature enacted Senate Bill No. 567, which took effect on January 1, 2022. Among other things, the bill amended section 1170, subdivision (b) to impose new requirements for trial courts selecting among three possible sentences for an offense. (Stats. 2021, ch. 731, § 1.3.)

As amended, section 1170, subdivision (b) provides that aggravating circumstances now justify the imposition of an upper term sentence only if "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) The amended statute also adds a third acceptable method of factfinding, permitting courts to "consider the

---

[9] All undesignated rule references are to the California Rules of Court.

defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) Newly added subdivision (b)(6) requires imposition of a lower term sentence when certain mitigating factors contributed to the commission of the offense, including when the defendant has experienced psychological, physical, or childhood trauma. (§ 1170, subd. (b)(6).)[10]

The People correctly concede the amended version of section 1170, subdivision (b) applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Conley* (2016) 63 Cal.4th 646, 657 ["in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible"]; *People v. Flores, supra*, 73 Cal.App.5th at p. 1039 [holding Sen. Bill No. 567 applies retroactively to nonfinal convictions on appeal].)

The parties also agree we must remand for resentencing.

---

**10** According to Sterritt, Assembly Bill No. 124 (2021-2022 Reg. Sess.) added section 1170, subdivision (b)(6). However, Assembly Bill No. 124 is not independently operative. In 2021, three bills proposing changes to section 1170 were enacted by the Legislature and signed by the Governor on the same day: Assembly Bill No. 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2), and Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3). (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 & fn. 11; *People v. Banner* (2022) 77 Cal.App.5th 226, 243, fn. 2 (conc. & dis. opn. of Detjen, J.).) Since Senate Bill No. 567 was the last bill the Governor signed and bears the highest chapter number, its amendments to section 1170 prevail over the amendments to that section specified in the other two bills. (Gov. Code, § 9605, subd. (b); *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.) However, Senate Bill No. 567 states that if that bill is enacted last of the three, section 1.3 of the bill incorporating the amendments proposed by Assembly Bill No. 124 and Assembly Bill No. 1540 shall become operative. (Stats. 2021, ch. 731, § 3.) Therefore, the amendments to section 1170, subdivision (b)(6) that defendant contends were made by Assembly Bill No. 124 became operative only through Senate Bill No. 567.

We conclude remand is required under section 1170, subdivision (b)(6) and do not reach Sterritt's other arguments.

In support of remand under section 1170, subdivision (b)(6), Sterritt asserts that psychological trauma and physical abuse go "hand in hand in the context of domestic abuse," and the evidence in the record indicates Sterritt was "the victim of psychological trauma and the possible victim of physical battering by one or both men." The evidence in the record consists of Sterritt's statement in the probation interview quoted above that she was in therapy to address emotional and mental abuse she endured from both men. Sterritt also asserts that the "contentious" conversation between Sterritt and Cameron where he pressured her to obtain money to bail him out of jail, which apparently led her to instigate the scheme to rob L.H. and use the proceeds to fund a down payment on Cameron's bail, is an example of abuse.

While this information was known to the trial court, the court did not have the benefit of section 1170, subdivision (b)(6) at the time of Sterritt's sentencing hearing and so did not conduct the analysis required by that section. When the trial court imposed sentence, Sterritt was not entitled to a presumptive lower term upon a showing that she suffered domestic abuse and related psychological and possible physical trauma, which was a "contributing factor in the commission" of her offenses. (§ 1170, subd. (b)(6).) Sterritt thus had less incentive to develop a record regarding these issues. By the same token, the trial court had less incentive to assess whether psychological trauma was a contributing factor to the crime. (See *People v. Banner, supra*, 77 Cal.App.5th at p. 242 ["record is likely incomplete relative to statutory factors enacted after judgment [is] pronounced"], citing *People v. Frahs* (2020) 9 Cal.5th 618, 637-638; see also *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.) When a sentencing court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez*

(2014) 58 Cal.4th 1354, 1391.) The record before us does not make it clear that the trial court would have imposed the upper term had section 1170, subdivision (b)(6) been in effect at the time. (*Banner*, at p. 242.) Therefore, we find remand is necessary.

On remand, the trial court may revisit all of its sentencing choices in light of new legislation. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"]; *People v. Gerson, supra*, 80 Cal.App.5th at p. 1096.)

## DISPOSITION

Sterritt's sentence is vacated and her case is remanded to the trial court for resentencing. The judgment is otherwise affirmed.

/s/<br>EARL, J.

We concur:

/s/
HULL, Acting P. J.

/s/
KRAUSE, J.