Filed 4/29/25  P. v. Todd CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C100921 |
| Plaintiff and Respondent, | (Super. Ct. No. 23CF04739) |
| v. | |
| HOWARD MONROE TODD, | |
| Defendant and Appellant. | |

Following a bench trial, the trial court found defendant Howard Monroe Todd guilty of burglary and misdemeanor resisting a peace officer.  On appeal, defendant argues there was insufficient evidence to support a finding he had the specific intent required for burglary when he entered the victim's house.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Gina G. was out of town for work when she received a call from her neighbor about unusual activity at her house.  At trial, the neighbor said he saw shopping carts in Gina's front yard and moved them to the street because he knew Gina was out of town.

1

The neighbor also saw a man in Gina's front yard claiming to be looking for a bicycle and told him to leave. The neighbor finally decided to call Gina after seeing more carts and lights on in the house. Gina called the police about the suspicious activity and the police checked on her house but did not believe anybody was there. Gina testified she locked all of her doors and windows before going out of town.

After that day, the neighbor parked his car in Gina's driveway to deter people from coming to the house. Thereafter, the neighbor noticed lights on again and heard a man's voice coming from inside the house. He then saw a group of people walk into Gina's house.

After hearing from the neighbor again, Gina called the police and Chico Police Officer Lindsay Stalnaker responded to Gina's house. On arrival, Officer Stalnaker was told by someone leaving the home that there were more people and dogs inside. Officer Stalnaker called for the individuals to leave the home through her car's intercom. The situation eventually escalated to defendant screaming obscenities at officers through the front door, statements claiming it was his home, and assertions he had squatter rights. After a standoff of approximately nine hours, police entered the home and arrested defendant who was hiding under a bed. Gina walked through the house afterwards and described it as "unrecognizable" and "filthy" in comparison to the "neat and tidy" condition from when she had left. Gina testified to seeing rotting food, drug paraphernalia, and urine and feces in her home. She also testified to seeing several items missing from the house such as jewelry, fishing poles, a snowboard, and a tool set.

At trial, defendant testified he lived as a transient and came across a house he believed to be abandoned. The mailbox was full, there were unraked leaves in the driveway, and no one answered the door after several days of knocking. Because of this, defendant jumped over the fence into the backyard and claimed to go through an unlocked back door. Defendant planned to see if taxes were owed on the property but never got the opportunity before his arrest. Defendant used Gina's utilities such as water,

2

electricity, and television service, and ate some of her food.  Defendant testified he intended to adversely possess the property and had been there for approximately five to six days before his arrest.

Defendant was found guilty of burglary and misdemeanor resisting a peace officer. The court sentenced him to an aggregate term of six years in prison.

Defendant appeals.

DISCUSSION

Defendant argues insufficient evidence supports his burglary conviction because the evidence does not demonstrate he held the required intent.  We disagree.

When reviewing a challenge to the sufficiency of the evidence, the relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  We look to see whether the record contains substantial evidence, which is evidence that is reasonable, credible, and of solid value.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*Ibid*.)  We apply this standard "whether direct or circumstantial evidence is involved."  (*People v. Catlin* (2001) 26 Cal.4th 81, 139.)  "Circumstantial evidence may constitute substantial evidence of guilt."  (*Id*. at p. 142.)

A person who "enters any house . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  (Pen. Code, § 459.)  For burglary, the intended felony need not actually occur.  (*People v. Lawrence* (2000) 24 Cal.4th 219, 232.)  But

3

the intent to commit a burglary must be present at the time of entry.  (*People v. Sparks* (2002) 28 Cal.4th 71, 85, fn. 17.)

Felonious intent "must usually be inferred" from circumstantial evidence. (*People v. Matson* (1974) 13 Cal.3d 35, 41.)  "[E]vidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry." (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.)  "[T]he taking of any item of personal property of even slight intrinsic value can constitute larceny in California." (*People v. Martinez* (2002) 95 Cal.App.4th 581, 586.)  Further, evidence of intent to use another person's utilities is enough to support a reasonable inference of felonious intent upon the unlawful entry in a home.  (*Ibid.* [holding that the defendant's intent to use a homeowner's soap, shampoo, and hot water constituted an intent to commit larceny]; *People v. Dingle* (1985) 174 Cal.App.3d 21, 29-30 [holding that intent to make an unauthorized phone call on the homeowner's phone amounted to an intent to commit larceny].)

Here, defendant admitted to using Gina's utilities such as water, electricity, and television service, and even eating some of her food.  Based on this, a trier of fact could have reasonably inferred defendant had a felonious intent to deprive Gina of her property at the time he first entered her home, if not at the time of subsequent entries.

Beyond defendant's testimonial admission to using Gina's utilities, Gina testified to several items missing from the house such as jewelry, fishing poles, a snowboard, and a tool set.  Gina testified her house was "neat and tidy" before she left and after the incident it was "unrecognizable" and "filthy."  A trier of fact could reasonably infer defendant's intent to commit larceny or some other felony based on the unlawful entry, interior damage, and defendant's close proximity to the theft at the time police arrested him. (*In re Leanna W.*, *supra*, 120 Cal.App.4th at p. 741 ["evidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry"].)  Defendant testified to innocently concealing his

4

presence in the house when police arrived after Gina's first call because the police did not knock and attempted to open the door. But a trier of fact could have rejected defendant's testimony and reasonably concluded he intentionally concealed his presence to hide wrongdoing, tending to show intent to commit a felony. (See *People v. Matson*, *supra*, 13 Cal.3d at pp. 41-42.) Taken together, a trier of fact could have reasonably concluded defendant intended to not only take and use Gina's utilities, but also to steal her other personal belongings in the house.

Defendant disagrees and argues there is insufficient evidence because the evidence conversely supports a finding "[defendant] entered what he believed to be an abandoned house with the intent to trespass for the purpose of adversely possessing the property under a claim of unwritten title." Although defendant offers evidence of his misguided belief that he had a right to adversely possess the property, "we do not reweigh credibility or resolve conflicts in the evidence." (*People v. Myles* (2023) 89 Cal.App.5th 711, 740.) Nor will we consider defendant's contention that another person was responsible for the theft crimes as alluded to in the probation report because we only consider evidence admitted at trial. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [a defendant "does not show the evidence is insufficient by citing only his[, her, or their] own evidence, or by arguing about what evidence is *not* in the record, or by portraying the evidence that is in the record in the light most favorable to himself," herself, or themselves].) Although some of the evidence could suggest defendant intended to adversely possess the property instead of committing larceny, "we are bound to sustain a conviction that is supported by only circumstantial evidence, even if that evidence is also reasonably susceptible of an interpretation that suggests innocence." (*People v. Little* (2004) 115 Cal.App.4th 766, 771.)

Accordingly, sufficient evidence supports defendant's burglary conviction.

5

## DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
MESIWALA, J.

6